ALFRED A. BARLAU v. MINNEAPOLIS-MOLINE POWER IMPLEMENT COMPANY.[1]

April 2, 1943.

No. 33,359.

[1]Reported in 9 N. W. (2d) 6.

*Faegre & Benson, Paul J. McGough,* and *Donald L. Robertson,* for relator.

*J. Russell Carroll,* for respondent.

PETERSON, JUSTICE.

The work of Alfred A. Barlau, employe, was to drill iron castings with a drill press in the employer's machine shop in Hopkins. He took the castings from a wheelbarrow, in which they were hauled and placed on his right, and, after drilling them, put them in a tray on his left.

While engaged in doing his work at about 11:30 a. m. on March 29, 1938, he fell to the floor. A fellow workman found him unconscious, lying on his right side close to the press and about a foot from the tray on his left. His legs were "kind of folded back" and curled under him. His eyes were wide open and staring.

He was taken on a stretcher to the nurse's office in the shop. There he was examined by the nurse, who put a thermometer under his left armpit and folded his left arm over his chest to hold the thermometer in place. In being helped to sit on a table, he put his left arm around her shoulder. His family physician, Dr. James A. Blake, who was called, made some examination. The employe was then helped to Dr. Blake's office, which was nearby, where he was placed on a cot. Dr. Blake examined him "rapidly." The employe, with the assistance of his wife and two brothers, then walked to his home nearby. On the way he complained of pain in his left shoulder. His wife assisted in undressing him. She noticed that his left shoulder and his right eye were "black and blue." He was then put to bed, where he remained until he was later removed to a hospital in Minneapolis. About 4:30 or 5:00 in the afternoon Dr. Blake was called. He found the employe in a fit of epilepsy. He ordered the employe removed to the hospital, where an X-ray was taken which showed a comminuted

fracture of the humerus extending into the head thereof at the shoulder joint.

The employe claimed that he sustained the injury to his arm and shoulder when he fell at his work. The employer claimed the injury occurred during the epileptiform seizure which the employe had had at his home. The fact of injury was not disputed, but the cause thereof was. The employe did not know just how he was injured. He testified that all he remembered was that, while he was engaged in doing his work, he "just simply went out like a light," and that was the last he remembered. He testified further that after recognizing his "brother and the nurse at the doctor's office in the plant" he did not again regain consciousness until after he had been removed to the hospital. The determination as to when and how he was injured was made with the aid of medical testimony.

For the employe, there was testimony that he was unconscious immediately following the injury and that he was stuporous until after he had been taken to the hospital. This was practically undisputed. His medical testimony was to the effect that he was injured by the fall while he was doing his work and that it was not likely that he sustained the injuries during the epileptiform seizure in his bed in his home. The reasons given for the opinion were that, since the humerus was dislocated backwards, the injury was caused by a severe, direct blow from the front; that such a blow might be caused by a fall forward; that the employe fell forward while at his work; that no fall other than the one which the employe sustained at his work was shown; and that an ordinary epileptic contraction could not produce such a fracture. The employe's medical expert, Dr. Herman, also testified that such an injury might well have escaped discovery in the course of the examinations prior to taking the X-ray at the hospital for the reasons that such an injury might not be observed even if the employe had had his clothes off and that discovery of such an injury depends upon coöperation of the patient by his manifestation

of pain when his parts are manipulated, which the employe was incapable of giving because of his stuporous condition.

The employer's medical testimony was to the effect that, although the nurse and Dr. Blake examined the employe before he was taken to the hospital, they failed to discover such an injury; that an epileptiform seizure could produce such an injury; and that, since the employe had the injury when he was received at the hospital and had had an epileptic seizure at his home, he sustained the injury during the seizure at his home. Dr. Blake testified that, while his opinion was as has been stated, he had examined the employe "rapidly" in the nurse's office and had gone over him *"roughly"* in his office, as doctors do in accident cases to determine if there are any serious injuries; that the examinations made by him might have failed to reveal the injury; and that the injury "could have happened at the plant."

The employe's claim petition was assigned by the commission to a referee for hearing and decision. The referee found that "the employe * * * sustained a 70 percent permanent disability of his left arm, including the shoulder joint," and made an award of compensation accordingly.

The employer appealed to the industrial commission from the referee's "findings of fact and decision." One of the members of the commission being incapacitated by illness, the appeal came on to be heard before the other two members on the testimony taken before the referee, all the records, files, and proceedings in the matter, and the arguments of counsel. One commissioner voted for affirmance, the other for reversal. Being equally divided, the commissioner voting for affirmance ordered that "the findings and decision of the referee stand affirmed."

Here, the employer contends: (1) The order of one commissioner affirming the referee's decision is not a decision of the commission and is invalid; (2) the injury did not arise in the course of the employment—that is, it occurred at the employe's home, where he was not serving the employer; and (3) the injury did not arise out of the employment, but out of the epilepsy afflicting

the employe during a seizure at his home, which was entirely disconnected with his work.

■ The answer to the question whether there was a decision of the commission by the equal division of the participating members depends upon whether a referee has the power to decide as well as to hear, and whether an appeal from a referee's decision to the commission is the same in essence as an appeal from one court to another.

The procedural provisions of the workmen's compensation act define the duties and powers of the industrial commission and its referees. The commission is composed of three commissioners. Minn. St. 1941, § 175.02 (§ 4033).[2] "A majority of the commissioners shall constitute a quorum for the exercise of the powers conferred and the duties imposed on the commission. A vacancy shall not impair the right of the remaining commissioners to exercise all the powers and perform all of the duties of the commission." § 175.09 (§ 4038). The commission has the power to appoint referees, § 175.13 (§ 4042), who are, in effect, its appointees and employes. The commission has the power to hear claim petitions or to assign them to one commissioner or to a *referee* for hearing. § 176.44 (§ 4303). After a claim petition has been assigned for hearing the commission may reassign it. § 176.45 (§ 4304). Where a case has been assigned, one commissioner or a referee, as the case may be, has the same power as the commission to render a decision in virtue of § 176.50 (§ 4309), which provides:

"The industrial commission, if a petition is directed to be heard by it, or the commissioner or referee to whom a petition is assigned for hearing, shall hear all competent evidence produced and make in writing and as soon as may be after the conclusion of the hearing such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and

[2]The references in parentheses are to sections of Mason Minn. St. 1927, except where otherwise indicated.

the evidence produced before it or him and the provisions of this chapter shall in its or his judgment require."

Under § 176.54 (§ 4313) "the commission, or a commissioner or a referee, in * * * conducting a hearing" shall not be bound by the technical rules of evidence.

An appeal may be taken to the commission from the decision of one commissioner or a referee under § 176.56 (Mason St. 1940 Supp. § 4315), which, so far as here material, provides:

"Any party in interest may, within 30 days after notice of a commissioner's or a referee's award or disallowance of compensation, or other order involving the merits of the case, shall have been served on him, take an appeal to the industrial commission on the ground:

"(1) That the award or disallowance of compensation, or other order appealed from, is not in conformity with the terms of this chapter, or that the commissioner or referee committed any other error of law;

"(2) That the findings of fact and award or disallowance of compensation, or other order appealed from, was unwarranted by the evidence, or was procured by fraud, coercion, or other improper conduct of any party in interest. The commission may upon cause shown within the 30 days extend the time for taking such appeal or for filing of an answer or other pleading * * *.

* * * * *

"On any such appeal the commission may disregard the findings of fact of the commissioner or referee and examine the testimony taken before such commissioner or referee, and, if it deem proper, may hear other evidence and substitute for the findings of the commissioner or referee such findings of fact as the evidence taken before the commissioner or referee, and the commission, as hereinbefore provided, may, in the judgment of the commission, require and make such disallowance or award of compensation or other order as the facts so found by it may require."

Other provisions of this section refer to the party appealing as

the "appellant" and require him as the appellant to pay the cost of the transcript on appeal.

Section 176.57 (§ 4316) provides:

"When an appeal to the commission shall be based upon an alleged error of law it shall be its duty to grant a hearing thereon," and that "the commission shall either sustain or reverse the commissioner's or referee's award or disallowance of compensation, or other order appealed from, or make such modification thereof as it shall deem proper."

Section 176.58 (§ 4317) provides that whenever an appeal is taken upon the ground that a commissioner's or referee's award or disallowance of compensation was unwarranted by evidence, or because of fraud, coercion, or other improper conduct by any party in interest, "the commission may *in its discretion* grant a hearing *de novo* before the commission * * * or sustain the commissioner's or referee's award or disallowance of compensation."

Section 176.61 (§ 4320) authorizes review by this court on *certiorari* "of any award or disallowance of compensation or order involving the merits of the case or any part thereof made by the commission."

The problem presented is, of course, one of statutory construction. In Moore v. J. A. McNulty Co. 171 Minn. 75, 77, 213 N. W. 546, 547, the record presented the same situation, but the point was not raised. We said:

"Without considering its effect we will treat it [decision by two commissioners, not in agreement] as the equivalent of an affirmance of the referee's findings and decision as in the case of a decision by a trial court affirmed by an appellate court the members of which are equally divided."

Relator contends that what we said in the McNulty case was dictum and that in later cases we in effect held to the contrary, as, for example, in Gorman v. Grinnell Co. Inc. 200 Minn. 122, 273 N. W. 694, where we said that the industrial commission is the trier of fact; and in Olson v. Carlton, 178 Minn. 34, 39, 225

N. W. 921, 923, where we said: "On appeal to the commission from the action of the referee the commission is a fact-finding body, and its jurisdiction as such must be exercised." It is also pointed out that in Rick v. Noble, 196 Minn. 185, 189, 264 N. W. 685, 687, we spoke of a decision by the "majority members of the commission."

Decision involves an inquiry into the powers of a referee and the relationship between the commission and a referee. The power to decide and to review may be reposed where the legislature decides. Subordinate officers may be invested with the power of decision. Higher officers may be invested with the power to review on appeal the decisions of their subordinates. United States v. Abilene & Southern Ry. Co. 265 U. S. 274, 44 S. Ct. 565, 68 L. ed. 1016; Schoenfeld v. Hendricks, 152 U. S. 691, 14 S. Ct. 754, 38 L. ed. 601; Butterworth v. Hoe, 112 U. S. 50, 5 S. Ct. 25, 28 L. ed. 656.

Some statutes in express terms declare what finality the decision of a subordinate authority shall have, as, for example, the interstate commerce act, which provides that an order of a division of the commission shall have the same force and effect as if made by the commission, subject to rehearing by the commission. United States v. Abilene & Southern Ry. Co. *supra.*

Some statutes are explicit that the power of decision shall be in the higher officer and that the subordinate shall conduct hearings and report the proceedings and evidence to his superior for decision. B. & O. R. Co. v. United States, 298 U. S. 349, 56 S. Ct. 797, 80 L. ed. 1209; Federal Radio Comm. v. Nelson Bros. B. & M. Co. 289 U. S. 266, 53 S. Ct. 627, 77 L. ed. 1166, 89 A. L. R. 406. Other statutes are silent with respect to these matters and leave them to be determined by the processes of construction. In Schoenfeld v. Hendricks, 152 U. S. 691, 14 S. Ct. 754, 38 L. ed. 601, and Butterworth v. Hoe, 112 U. S. 50, 5 S. Ct. 25, 28 L. ed. 656, the subordinate was held to have the power of decision, subject to appeal. In Orchard v. Alexander, 157 U. S. 372, 15 S. Ct. 635, 39 L. ed. 737, the higher authority was held to have the power

of decision as an incident of his supervision and control over the subordinate. In Butterworth v. Hoe, *supra*, the court said that the argument from the analogy of the general relation of the heads of executive departments to their subordinates, while not without force, is apt to mislead, unless particular regard is had to the nature of the duties entrusted to the subordinate and the respective jurisdictions of the superior and his subordinates; "for it will be found, on a careful examination, * * * that the general relation between them, of superior and inferior, is varied by the most diverse provisions, so that in respect to some bureaus the connection with the department seems almost clerical, and one of mere obedience to direction, while in that of others the action of the officer, although a subordinate, is entirely independent, and, so far as executive control is concerned, conclusive and irreversible." In that case it was held that the decisions of the commissioner of patents in cases involving priority of inventions were not subject to revision by the secretary of the interior, under whose executive direction and supervision the commissioner discharged his duties, but were subject to review solely by appeal to the district court of the District of Columbia.

We think that it was the legislative intention that under the workmen's compensation act a referee's decision in cases assigned to him for hearing and decision should be final unless reversed on appeal.[3] A referee is required to conduct hearings and to decide claim petitions assigned to him in precisely the same manner as the commission does in cases where it retains a case for hearing and decision. By providing in § 176.54 (§ 4313) that "the commission, or a commissioner or a referee, in * * * conducting a hearing" shall not be bound by the technical rules of

---

[3]After extended study, a committee appointed by the attorney general of the United States recommended that the hearing officer should have the power of decision and that any subsequent hearing before higher administrative officers should be in the nature of an administrative review, not an original determination. Final Report of Attorney General's Committee on Administrative Procedure. Senate Document No. 8, 77th Congress, 1st Sess., pp. 50 to 52.

evidence, and by providing in § 176.50 (§ 4309) that the commission or a commissioner or a referee "shall hear all competent evidence produced" and shall "make * * * such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced before *it* or *him* and the provisions of this chapter shall in *its* or *his* judgment require," the power of a referee to decide in the first instance is placed upon the same basis as that of the commission itself. Both derive their powers to decide from the same statute, which uses the same language with respect to each. Because the grant of power to a referee to decide is couched in the same language as that of the grant to the commission itself, the inference is that a referee shall have the same power to decide as the commission.

A hearing before and a decision by a referee are essentially judicial in character, because he is required to exercise his judgment on disputed questions of law and fact in deciding the rights of the parties. A judicial determination must be by independent action. The statute provides, in effect, that in deciding cases assigned to him a referee shall exercise an independent judgment which shall be final, subject to review on appeal. See Butterworth v. Hoe, 112 U. S. 50, 5 S. Ct. 25, 28 L. ed. 656, *supra.*

The language in the provisions relating to appeals is couched in terms applicable to appeals from one court to another. The mode of disposition of appeals from a referee to the commission is similar to that from a trial court to the supreme court. Under § 605.05 (§ 9494), this court, in civil actions, upon an appeal "may reverse, affirm, or modify the judgment or order appealed from." This is not different, in substance, from § 176.57 (§ 4316), which provides that the commission may either sustain or reverse the commissioner's or referee's award or disallowance of compensation or make such modification thereof as it shall deem proper. By assimilating the rules with respect to appeals in the courts to appeals from a referee to the commission, the same rules of law are made applicable. In the very nature of things, there can be no

appeal where there is no decision from which to appeal. An appeal presupposes a decision by a lower authority. Hampshire Arms Hotel Co. v. Wells, 210 Minn. 286, 298 N. W. 452; Thompson v. C. & N. W. Ry. Co. 178 Minn. 232, 226 N. W. 700. We shall not assume that the legislature indulged in the absurdity of providing for an appeal where, according to all rules and common sense, none would lie. The very fact that the referee's decision is reviewable by appeal shows, inferentially at least, that it was the legislative intention that a referee should have the power to make a decision. An appeal from a referee's decision to the commission is one from a lower to a higher administrative authority. In United States v. Abilene & Southern Ry. Co. 265 U. S. 274, 281, 44 St. Ct. 565, 567, 68 L. ed. 1016, holding that an order made by a division of the interstate commerce commission, subject to rehearing by the commission, is a final order, having the same force and effect as one made by the commission and subject to judicial review, Mr. Justice Brandeis said: "Under these circumstances, what is here called a rehearing resembles an appeal to another administrative tribunal."

The history of the statute removes all doubt, if there is any, as to the proper construction of the powers of a referee and the nature of an appeal to the commission from a referee's decision. See Senate Document No. 1, which contains the reports of the senate and house interim commissions on industrial accident compensation and state industrial insurance, which is published as an appendix to the Journal of the House, 1921. Prior to 1921, compensation cases were tried by the district court. In 1919 the state senate and the state house of representatives appointed separate interim commissions, which apparently acted in concert to investigate and consider the entire subject of workmen's compensation and the administration thereof. The interim commissions, after extensive investigation and study, made written reports of their work, with recommendations that a proposed bill be adopted. This bill was enacted without substantial change as L. 1921, c. 82, which, with some amendments, constitutes the present law. Both

commissions recommended that workmen's compensation cases be tried by the industrial commission instead of by the district court. In the reports it was recommended that the procedural provisions appearing in the present law be adopted. The senate commission recommended (Journal of the House, 1921, p. 1772) "that, as to administering the workmen's compensation act, it [the industrial commission] be left with broad discretion to hear claims originally or assign them *for hearing and decision* to one of its members or a *referee* in the regular employment of the commission, subject to review on appeal." It explained that, under the proposed bill (p. 1782): *"On an original hearing* of a petition, *a commissioner or referee, as well as the commission, may make a definite award, the finality of which is subject only to an appeal to the commission,* and an appeal from that body to the Supreme Court." (Italics supplied.)

The house commission made a similar explanation of the provisions in question, as follows (p. 1844-5): "At the conclusion of the hearing, the Commission, Commissioner or Referee makes its or his findings of fact, conclusions of law and an award or disallowance of compensation," and either party may appeal to the commission from an award or disallowance of compensation by a commissioner or referee and the appeal may be on questions of law or fact, or both.

The separate reports of the senate and house commissions were treated by the legislature as the report of one interim commission. The proposed bill embodying the recommendations of the interim commissions was understood by the entire legislature as intending to accomplish the purposes stated in the bill and in the explanations thereof in the commissions' reports. The legislative history of a statute may be considered in determining its meaning. L. 1941, c. 492, § 16(7). Committee reports often persuasively show the intended legislative meaning. Enger v. Holm, 213 Minn. 154, 6 N. W. (2d) 101.[4] Text, context, and history of the statute all

---

[4]The Supreme Court of the United States resorts to the reports of committees of congress for aid in ascertaining congressional intention. Hel-

show that the legislature intended that a referee should have the power to hear and decide; that a referee's decision should possess finality like that of a trial court; and that an appeal to the commission from a referee's decision should be an administrative appeal, the same in essence as an appeal from a lower to a higher court.

Where an appeal is taken from a referee's decision to the commission, the commission exercises appellate, not original, jurisdiction. The fact that the commission may hear new evidence, try the case *de novo, in its discretion,* and make its own findings and decision is not inconsistent with a hearing on appeal in its traditional and technical meaning, however inconsistent such a hearing may be with review by writ of error. Mixed Local of H. & R. Employes Union v. Int'l Alliance, 212 Minn. 587, 593-594, 4 N. W. (2d) 771; Dutcher v. Culver, 23 Minn. 415.

Where the members of an appellate court participating in decision are equally divided in opinion, the judgment or order will be affirmed by operation of law. Gran v. Spangenberg, 53 Minn. 42, 54 N. W. 933. The plain reason is that there is, in fact, a decision which can only be reversed by the vote of the majority, and where a majority vote is lacking the decision already made must stand. The rule applies to administrative authorities. Chicago Rys. Co. v. Commerce Comm. ex rel. Chicago M. C. Co. 336 Ill. 51, 167 N. E. 840, 67 A. L. R. 938. In the cited case a rehearing was held to be denied because the members of the commission participating were equally divided in opinion.

Relator relies on State v. Industrial Comm. 233 Wis. 461, 289

---

vering v. Griffiths, 318 U. S. 371, 63 S. Ct. 636, 87 L. ed. ..., decided March 1, 1943; Helvering v. American Dental Co. 318 U. S. 322, 63 S. Ct. 577, 87 L. ed. ..., decided March 1, 1943; Federal Security Administrator v. Quaker Oats Co. 318 U. S. 218, 63 S. Ct. 589, 87 L. ed. ..., decided March 1, 1943; Smith v. Shaughnessy, 318 U. S. 176, 63 S. Ct. 545, 87 L. ed. ..., decided February 15, 1943; United States v. Wrightwood Dairy Co. 315 U. S. 110, 62 S. Ct. 523, 86 L. ed. 726; United States v. Dickerson, 310 U. S. 554, 60 S. Ct. 1034, 84 L. ed. 1356; N. P. Ry. Co. v. Washington ex rel. Atkinson, 222 U. S. 370, 32 S. Ct. 160, 56 L. ed. 237.

N. W. 769, which holds to the contrary. But that case is distinguishable because the statute (Wisconsin St. 1941, § 102.18, subds. 2 and 3) provides that an "examiner's" (referee's) decision shall be final *if* no petition by a party in interest shall be filed within 20 days "with the industrial commission as a commission to review the findings or order." The word "if" plainly shows a legislative intent to attach a condition to the finality of the examiner's decision, the occurrence of which, that is, the filing of a petition for review, prevents his decision from becoming final. The filing of a petition in effect brings the matter before the commission without a decision, for, as the court said (233 Wis. 465, 289 N. W. 771), the petition to review under the statute transfers to the commission as a body the duty of passing upon the merits of the case," and that, consequently, "when review is asked, the findings and order can become effective only when supported by the findings of fact by the commission and order made thereon by such commission as a body." In other words, since the filing of a petition for a review prevents the referee's order from becoming final, there is, of course, in such case no decision to be either affirmed or reversed by the commission and, for lack of a decision, the commission must make one of its own in the exercise of its original, not appellate, jurisdiction to determine the matter. Our statute contains no such provision. An appeal under our statute does not, *ipso facto,* prevent a referee's decision from becoming final, nor does it remove a case to the commission for original decision. A trial *de novo* before the commission can be granted only in the exercise of the commission's discretion, which, according to the plain meaning of the statute, requires a majority vote. Because of the difference between the Wisconsin statute and ours, we cannot follow the cited case.

Our conclusion is that a referee's decision is final unless reversed on appeal and that the appeal in the instant case resulted in an affirmance because the members of the commission participating were equally divided in opinion.

■ The employe was injured in the course of his employment if the accidental injury occurred while he was doing his work. Cavilla v. Northern States Power Co. 213 Minn. 331, 6 N. W. (2d) 812. Relator contends that the evidence establishes as a matter of law that the employe's injuries were sustained as the result of an epileptic seizure, not while he was doing his work at its plant but while he was at home in bed. Dr. Blake so testified, but he also stated that the injury *could* have occurred at the plant and that subsequent examinations prior to the one made at the hospital might have failed to reveal the injuries. Another doctor gave an opinion that the injury occurred at the employe's home. On the other hand, there was medical testimony for the employe to the effect that the injury occurred at the plant while he was engaged in doing his work. The reason for such opinion was that it was probable that the injury was sustained as the result of a fall forward, such as the employe had had at the plant while doing his work, and that it was not likely the injury could have occurred from an epileptic fit while he was at home in bed. The conflicting evidence presented a fact issue. The evidence in favor of the employe amply sustains the finding below. Swanson v. American Hoist & Derrick Co. 214 Minn. 323, 8 N. W. (2d) 24.

■ The accident arose out of the employment if there was a causal connection between the employment and the injury. Cavilla v. Northern States Power Co. *supra*. By "causal connection" is meant not proximate cause as that term is used in the law of negligence, but cause in the sense that the accident had its origin in the hazards to which the employment exposed the employe while doing his work. Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 297 N. W. 19. It is conceded that the instant case is ruled by Stenberg v. Raymond Co-op. Creamery, 209 Minn. 366, 296 N. W. 498, where we held that an injury to an employe, who had a defective knee, caused by a fall, arose out of his employment. Here the employe, according to the evidence, had epilepsy. In both cases the physical condition of the employe contributed to the fall. In the Stenberg case we held that the fall arose out of the em-

ployment. Here the evidence showed that the employe, in doing his work, reached over to the right for castings and that, when he was through drilling them, he reached over to the left to place them in the tray. This evidence permitted the inference that he was engaged in doing that part of the work at the time he sustained the injury. In the Stenberg case we considered the question at length. The decided weight of authority, following the same reasoning as the Stenberg case, holds that an accidental injury or death of an employe, while doing his work, caused by falling because of an epileptic seizure, arises out of the employment. Georgetown College v. Stone, 61 App. D. C. 200, 59 F. (2d) 875; Savage v. St. Aeden's Church, 122 Conn. 343, 189 A. 599; Gonier v. Chase Companies, Inc. 97 Conn. 46, 115 A. 677, 19 A. L. R. 83; Rockford Hotel Co. v. Industrial Comm. 300 Ill. 87, 132 N. E. 759, 19 A. L. R. 80; Baltimore Dry Docks & Shipbuilding Co. v. Webster, 139 Md. 616, 116 A. 842; Cusick's Case, 260 Mass. 421, 157 N. E. 596; Mausert v. Albany Builders Supply Co. 250 N. Y. 21, 164 N. E. 729; Carroll v. What Cheer Stables Co. 38 R. I. 421, 96 A. 208, L. R. A. 1916D, 154, Ann. Cas. 1918B, 346; Wicks v. Dowell & Co. Ltd. [1905] 2 K. B. 225. There are some authorities which have adopted a contrary view, such as Brooker v. Industrial Acc. Comm. 176 Cal. 275, 168 P. 126, L. R. A. 1918F, 878; Cox v. Kansas City Ref. Co. 108 Kan. 320, 195 P. 863, 19 A. L. R. 90; Van Gorder v. Packard Motorcar Co. 195 Mich. 588, 162 N. W. 107, L. R. A. 1917E, 522.

We adhere to the rule of the Stenberg case.

The employe is allowed $100 attorneys' fees in this court.

Writ discharged and decision affirmed.