VICTOR CHRISTGAU v. LEWIS FINE AND ANOTHER,
d. b. a. STUART COMPANY.[1]

April 18, 1947.

No. 34,363.

[1]Reported in 27 N. W. (2d) 193.

S. *Robins* and *William W. Fink,* for relators.

*J. A. A. Burnquist,* Attorney General, *K. D. Stalland,* Assistant Attorney General, and *George W. Olson,* for respondent.

PETERSON, JUSTICE.

Certiorari to review the determination under the Minnesota employment and security law by the director of the division of employment and security of relators' contribution rate as employers for the year 1946.

The questions for decision are (1) whether, where a referee affirms a determination of the division denying an employer's application under § 268.06, subd. 24, for a lower rate of contribution in a case where the application was not filed until after the 30 days for taking an appeal under subd. 20 of § 268.06 to the director from a determination of an employer's contribution rate, which is the time adopted by § 268.06, subd. 24, within which such an application is directed to be filed, the director has jurisdiction of an appeal from the decision of the referee; and (2) whether, if the preceding question is answered in the affirmative, the case should be remanded to the director for decision on the merits because of the fact that his decision was against the employer, upon the ground that he lacked jurisdiction to entertain the appeal and for that reason did not pass on the merits of the case.

The facts giving rise to these questions are, in short, that the division mailed to the employers a notice showing that their contribution rate for 1946 had been determined to be 2.25 percent of their taxable payroll; that the notice bore as the mailing date January

31, 1946; that, while it was not definitely shown when the employers received the notice, the fact is that they received it on or about the date mentioned; and that, while their rate was determined to be 2.25 percent, the employers were entitled to a rate of 0.50 percent, provided *they made application therefor within 30 days after the mailing date and paid benefits of $158.72 charged against their account.* The 30 days expired on March 2, 1946. On March 1, 1946, the division mailed a letter to the employers stating therein that it was a "reminder" of the provision of the statute entitling them to the lower rate upon compliance within 30 days with the proviso *as to making application and paying the $158.72* and advising them to act promptly, "since the last date for filing an application and making payment of the benefit charges *in most instances* will be March 7, 1946." (Italics supplied.)

On March 8, 1946, the division received by mail the employers' application for the lower rate and a check for $158.72 to cover the benefit charges. On March 14, 1946, the division "denied" the "application" and returned the check upon the ground of "failure to make application and reimbursement timely."

On March 27, 1946, the employers appealed to a referee from the determination of their contribution rate, upon the ground that through inadvertence the notice of determination of their rate had been misplaced and for that reason was not attended to promptly. The evidence showed that the employers are partners, doing business as the Stuart Company; that they travel much of the time attending to the business of selling merchandise; that their office was in charge of an office manager; that they had an arrangement with a public accountant under which he regularly, at approximately biweekly intervals, inspected their books, papers, and vouchers; that, if he had seen the notice from the division, he would have seen to it that within the 30 days mentioned application would have been made by the employers for the 0.50 percent rate and the $158.72 would have been paid by them; that the reason the notice from the division did not come to the attention of the employers or their accountant was that it had been mislaid because of the fact that

the employers' office was being remodeled and their files and records had been disarranged; that on March 7, 1946, the employers discovered the notice they had received; that on that date they immediately executed the necessary application for the 0.50 percent rate and mailed it to the division, together with a check to cover the $158.72; that on March 8, 1946, the division received the application and check; and that thereafter the division denied the application and returned the check. The referee approved the determination of the rate of contribution at 2.25 percent upon the ground that the employers had failed to file their application for the 0.50 percent rate and to pay the $158.72 within 30 days after the mailing date of the notice of determination.

On June 26, 1946, the employers appealed to the director from the referee's decision. The appeal was heard by a duly authorized representative of the director, who affirmed the decision of the referee upon the sole ground that the director lacked jurisdiction because the employers did not file their application for the 0.50 percent rate or pay the $158.72 within 30 days after the mailing date of the notice of determination of their contribution rate. The director did not pass on the merits. He filed a memorandum explaining at length his views concerning the jurisdictional question.

■ The answer to the question whether the director had jurisdiction to entertain the employers' appeal from the referee's decision depends upon the construction of the pertinent statutes. Under § 268.12, it is the duty of the director to "administer" the employment and security law. Section 268.06, subd. 20, provides that an appeal from a referee's decision to the director shall be taken in the same manner as an appeal to the director from an appeal tribunal. The act declares that appeal tribunals are established "In order to assure the prompt disposition of all claims for benefits." § 268.10, subd. 4. Under § 268.06, subd. 24,[3] any employer entitled to a lower

[3]Section 268.06, subd. 24, provides:

"Any employer who has been assigned a contribution rate pursuant to subdivision 4 of this section may, for the calendar year 1945 or any calendar year thereafter, obtain a cancellation of all benefits charged to his

contribution rate, as these employers were, is required to make application therefor and to pay an amount equal to all the benefits charged against him "within the period provided for requesting a review and redetermination of employers' rates prescribed in this section." The period referred to is fixed at 30 days by § 268.06, subd. 20.[4] The last-mentioned subdivision provides that the director

account during the 36 consecutive month period ending June 30 of the preceding year by making a voluntary contribution to the unemployment compensation fund in an amount equal to all the benefits charged during such period, provided all benefits so charged are less than $300.

"Upon the payment of such voluntary contribution within the period provided for requesting a review and redetermination of employers' rates prescribed in this section, the director shall cancel the benefits so charged and assign to such employer the minimum contribution rate available for such year; provided, the period for making voluntary contributions hereunder for the calendar year 1945 shall extend to September 1, 1945. Provided further that in the event the Social Security Board shall determine that this subdivision is not in conformity with the various provisions of the Federal Internal Revenue Code or the Social Security Act, then this subdivision shall have no force or effect."

[4]Section 268.06, subd. 20, provides:

"The director may in his discretion within six months from the date of mailing such notice order a redetermination or review of any benefit charge or rate of determination. Any employer desiring to obtain a review shall, within 30 days from the date appearing on the notice of the determination to be reviewed, file with the director a protest setting forth the reasons therefor. Upon receipt of such protest the director may redetermine the matter or refer the matter for hearing before a referee appointed by him for that purpose. In the event of a redetermination, a notice thereof shall be mailed to the employer. If within ten days from the date of the redetermination an employer files an appeal, the matter shall be referred to a referee for hearing. After affording the parties reasonable opportunity for a fair hearing, the referee shall affirm, modify, or set aside the determination. The referee may order the consolidation of two or more appeals whenever, in his judgment, such consolidation will not be prejudicial to any interested party. At any such hearing a written report of any employee of the division which has been authenticated shall be admissible in evidence. Appeals from the decision of the referee shall be made in the same manner as appeals from the decision of an appeal tribunal. Decisions of the director made upon appeal from a decision of

may in his discretion within six months from the date of mailing order a redetermination or review of any benefit charge or rate of determination. It further provides that upon receipt of a protest against his rate of contribution by an employer the director may redetermine the matter or refer it to a referee appointed by him for that purpose (as was done here) ; that an employer may appeal from the referee's decision to the director; that such an appeal shall be referred to a referee, who shall affirm, modify, or set aside the determination; that such appeals shall be taken in the same manner as appeals from appeal tribunals (which are governed by § 268.10) ; and that the director's decisions so made shall be reviewable by this court on certiorari.

When we speak of the jurisdiction of the director and a referee in this connection, we mean simply their powers under the act. See, Robinette v. Price, 214 Minn. 521, 8 N. W. (2d) 800.

To begin with, it has been settled by our decision in Bielke v. American Crystal Sugar Co. 206 Minn. 308, 288 N. W. 584, that, under well-settled rules for determining whether a statutory provision is mandatory or directory, the provisions of the act in question directing the doing of certain things within certain times without any negative words restraining the doing thereof afterward are usually to be deemed directory. We there said (206 Minn. 312-314, 288 N. W. 586-587) :

"Substantive law is one thing; procedural law another. In new and remedial legislation, the two normally go together. But the procedural does not, unless so stated or plainly implied, qualify or limit the substantive. Rather, its only purpose is, by implementation, to make the whole thing work. Delay in setting up the machinery of administration should not deprive anyone of a substantive right. Nor should it operate, unless the legislature itself has so stated, to confer upon another a new sort of right not otherwise granted.

the referee shall be reviewed by the supreme court upon certiorari in accordance with the procedure outlined therefor with respect to benefit decisions."

" 'Generally speaking, those provisions which do not relate to the essence of the thing to be done and as to which compliance is a matter of convenience rather than substance are directory, while the provisions which relate to the essence of the thing to be done, that is, to matters of substance, are mandatory. * * * In many cases the precise time when an act is to be done is not of the essence. Where a statute directs the doing of a thing in a certain time without any negative words restraining the doing of it afterwards, the provision as to time is usually directory, and not a limitation of authority.' 25 R. C. L. p. 767.

\* \* \* \* \*

"But if that be error, and we were to seek aid in the new law of 1939, we would find nothing, more than that already discussed, of present relevance—nothing in any event to allow us to approve the act of an administrative commission, which amounts to the conversion of a mere procedural provision into a bar to a purpose of the legislature plainly declared in the same law. We do not so far allow procedure to control fundamental law, nor form so far to change substance."

The statutory provision allowing an employer 30 days within which to apply for a lower contribution rate and to pay benefits charged against him is directory under the rule as being one relating to the time within which such acts were to be done, but not as being of their essence. This conclusion finds support in the provisions of § 268.06, subd. 20, authorizing the director at any time within six months from the date of mailing notice of determination to order a redetermination or review of any rate of determination. Under that provision, the director can do at any time within six months what an employer may demand upon appeal taken within 30 days. If the director has the power to do the act on his motion at any time within six months, the 30 days within which an employer may invoke the director's action by the filing of an application and the paying of the benefits cannot be said to go to the essence of an employer's right to have the director consider the matter.

Furthermore, the director himself so construed the provision in question by his letter of March 1, 1946. In spite of the fact that the 30 days expired on March 2, 1946 (the day on which the employers probably received the letter), the director stated in his letter that it was a "reminder" to take advantage promptly of the provisions of the statute for getting the lower contribution rate and that "in most instances" the time for doing so would expire on March 7, 1946. Thus, the director in effect exercised power to fix the compliance date as one different from that prescribed by the statute—he fixed it five days after the expiration of the 30-day period. Such an exercise of power fixing the time for doing things required by the statute to be done at a different time could be justified only if the provision in question insofar as it prescribed the time within which to do the acts mentioned was directory, as we in effect held in the Bielke case. We have no doubt that the director entertains such a view of his powers. We have not overlooked an attempted explanation by the director upon the argument of the meaning of the language used in the letter, but we do not follow it.

Since the provision regulating the time within which an employer may apply for the lower contribution rate and pay the benefits charged against him is directory, the director misapprehended his power in the premises. Hence, he erred in holding that, because the employers here filed their application and tendered payment of the benefits charged against them after the 30 days prescribed for the purposes had elapsed, he lacked jurisdiction of the matter and in dismissing the employers' appeal from the referee's determination upon that ground.

The provisions regulating the time within which an employer may file an application for a lower contribution rate and pay any benefits charged against him is no less directory because of the fact that the period adopted for such purpose is the one fixed by another section within which an employer may appeal from an order of determination. The filing of the application and the making of the payment is not an appeal. Nor does the fact that the statute states that such acts shall be done within the time allowed for taking an

appeal assimilate the rules applicable to appellate procedure. The argument in support of the view that the time allowed has the same effect as the time allowed for taking an appeal in a judicial proceeding is that, because the time allowed for taking the latter is jurisdictional, so is the time allowed for taking an administrative appeal under the statute in question, and therefore the time allowed for an employer to file the application and make the payment is jurisdictional also. There is no basis for such views, as we shall presently show.

The so-called appeals under § 268.06, subd. 20, are in reality simply procedures for administrative rehearing and review. Orchard v. Alexander, 157 U. S. 372, 15 S. Ct. 635, 39 L. ed. 737; Knight v. United Land Assn. 142 U. S. 161, 12 S. Ct. 258, 35 L. ed. 974; 42 Am. Jur., Public Administrative Law, §§ 182 to 184. Their purpose is to expedite and facilitate the dispatch of business within the administrative setup of which they are a part. Except as provided by statute, they lack the attributes of appeals in judicial proceedings, even though the terminology and the procedure may be similar. Barlau v. Minneapolis-Moline Power Imp. Co. 214 Minn. 564, 9 N. W. (2d) 6. The fact that the administrative procedure is called an appeal does not afford any basis for an inference that the time prescribed for doing acts to comply with such procedure is jurisdictional.

Of course, the attributes of an appeal in a judicial proceeding may be assimilated by statute to an administrative appeal, as we held in the Barlau case had been done in the case of appeals in workmen's compensation cases from a decision of a referee to the commission. But such a result is permissible only where the legislature has manifested such an intention by providing either that the subordinate official's decision shall possess finality or at least finality subject to review on appeal or that the determination of the subordinate official shall be made by him independent of his superior. Schoenfeld v. Hendricks, 152 U. S. 691, 14 S. Ct. 754, 38 L. ed. 601; Butterworth v. United States ex rel. Hoe, 112 U. S. 50, 5 S. Ct. 25, 28 L. ed. 656. This is upon the principle that the power to make an

administrative determination is in the official in whom the legislature has reposed it. Barlau v. Minneapolis-Moline Power Imp. Co. *supra*. Tokens of legislative intention to ascribe to administrative appeals here involved the attributes of appeals in judicial proceedings are lacking. There are at least two affirmative tokens of a contrary intention.

The director's power to "administer" the division comprehends the right and the duty to act at any stage with respect to matters pending, regardless of whether they are brought to his attention by a so-called appeal or otherwise. Certainly, that may be done within the six-month period for redetermination or review by the director of contribution rate determinations. Power to *direct* a department has been held to confer such power, notwithstanding the fact that matters might be brought before the superior official by appeals under administrative rules having the force of law. This question received full and elaborate consideration in Orchard v. Alexander, 157 U. S. 372, 15 S. Ct. 635, 39 L. ed. 737, and Knight v. United Land Assn. 142 U. S. 161, 12 S. Ct. 258, 35 L. ed. 974, *supra,* where it was decided that the secretary of the interior, because the General Land Office was under his "direction," had the power to act with respect to any matter concerning the issuance of a land patent, whether the matter came before him upon an appeal authorized by law or whether he acted on his own motion. In the Knight case, the court, quoting from a decision of the land office, said (142 U. S. 178, 12 S. Ct. 262, 35 L. ed. 980) :

"* * * 'The statutes in placing the whole business of the Department under the supervision of the Secretary, invest him with authority to review, reverse, amend, annul or affirm all proceedings in the Department having for their ultimate object to secure the alienation of any portion of the public lands, or the adjustment of private claims to lands, with a just regard to the rights of the public and of private parties. Such supervision may be exercised by direct orders or by review on appeals. The mode in which the supervision shall be exercised in the absence of statutory direction may be prescribed by such rules and regulations as the Secretary may adopt.

When proceedings affecting titles to lands are before the Department the power of supervision may be exercised by the Secretary, whether these proceedings are called to his attention by formal notice or by appeal. It is sufficient that they are brought to his notice. The rules prescribed are designed to facilitate the Department in the despatch of business, not to defeat the supervision of the Secretary.' "

It makes no difference that the statute there involved conferred power to *direct* and the one here involved conferred power to *administer*. The terms are synonymous. Both mean to manage, control, and conduct the affairs or business of the governmental agency to which they relate. Nor does it make any difference that the appeals involved in the cited cases were authorized under rules adopted pursuant to statute and those involved here were provided for in the statute itself. In any event, both are authorized by law.

The legislature manifested an intention that the appeals here involved should not have the attributes of appeals in judicial proceedings by in effect conferring upon the director original jurisdiction *at any stage* of the pendency of a matter in the division and by in effect declaring that the appeals are mere administrative procedures to facilitate the dispatch of business within the division. By the provisions authorizing the director to administer the division and to proceed on his own motion at any time within six months after the date of the determination of a contribution rate to order a redetermination or review, there was conferred upon the director original jurisdiction in the premises. By clear implication, this negatives the idea that his jurisdiction is appellate, for the reason, as we said in the Barlau case, an appeal involves two tribunals, one of which has the power to decide in the first instance and the other to review on appeal a decision so made. The director's power to decide in the first instance excludes the idea of a real appeal. Likewise, the director's power under § 268.06, subd. 20, to decide such matters himself in the first instance or to refer them to a referee for decision, for lack of statutory declaration that the referee should act independent of the director or that the referee's decision

should possess finality of some sort, shows that it was the intention that the director should have original jurisdiction. See, Barlau v. Minneapolis-Moline Power Imp. Co. 214 Minn. 564, 9 N. W. (2d) 6, *supra*. By providing in § 268.06, subd. 20, that appeals of the kind here involved should be taken in the same manner as those from appeal tribunals, the legislature in effect declared that the former are essentially of the same nature as the latter. The legislature appraised appeals from appeal tribunals as being mere administrative procedures by declaring in § 268.10, subd. 4, that the purpose thereof is "to assure the prompt disposition of all claims for benefits." Because appeals of the kind here involved are of the same nature as those from appeal tribunals and because the latter are mere administrative procedures, it follows that the former also are. See, Orchard v. Alexander, 157 U. S. 372, 15 S. Ct. 635, 39 L. ed. 737, and Knight v. United Land Assn. 142 U. S. 161, 12 S. Ct. 258, 35 L. ed. 974, *supra*. In short, here we have in effect a legislative declaration that, while the procedures are called appeals, they are in reality mere administrative procedures to facilitate the dispatch of business in the division.

Our conclusion is that the director had jurisdiction of the application filed by the employers to obtain the lower contribution rate and that he erred in dismissing the appeal from the referee's decision upon the ground that he lacked jurisdiction of the application and hence of all subsequent proceedings.

The only question raised on this appeal is the jurisdictional one. This we have decided. We think that we should not pass on the merits, because it is the function of the director to pass on the matter in the first instance. Our function is to review his decision, not to make one for him. Such questions as the consequences to be attached to the employers' delay in filing their application for the lower contribution rate, together with a tender of the amount of benefits charged against them, and those relating to the merits of their case otherwise remain for the director's decision. It will be time enough for us to pass on them, if that becomes necessary, under the ordinary rules applicable on review after the director has

decided the case on the merits. See, Connecticut L. & P. Co. v. Federal Power Comm. 324 U. S. 515, 65 S. Ct. 749, 89 L. ed. 1150.

Reversed, decision set aside, and case remanded for further proceedings in accordance with the opinion.

