No. 19,059.

PEOPLE OF THE STATE OF COLORADO, EX REL. DUKE W.
DUNBAR, ATTORNEY GENERAL, ET AL. *v.* THE FIRST
NATIONAL BANK OF COLORADO SPRINGS, EXECUTOR, ETC.
(356 P. [2d] 967)

Decided November 14, 1960.   Rehearing denied December 5, 1960.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Neil Tasher, Assistant and Inheritance Tax Commissioner, Mr. Floyd B. Engeman, Assistant, for plaintiffs in error.

Messrs. Haney & Howbert, for defendant in error.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Plaintiffs in error shall be referred to as the State and defendant in error as the Bank. The State suffered an adverse judgment relating to an inheritance tax assessment and seeks reversal by writ of error. It had filed a report of assessment based on values as of the date of death, refusing to revalue the assets of the estate based on the optional provisions of C.R.S. '53, 138-4-67, as requested by the Bank. The action of the State in this respect was held by the trial court to be erroneous.

Said section in part provides:

"The executor, administrator or other personal representative of a decedent may elect to accept the provisions of this section by filing with the inheritance tax commission a written notice of such election within thirteen months from the death of such decedent. In event such election shall be made, the executor, administrator or other personal representative, within fifteen months, or within such further period as the inheritance tax commissioner may fix by written extension, after the date of death of decedent, shall file with the commissioner a supplement to the sworn statement required under section 138-4-42, setting forth the values applicable to each item of property included therein as valued under the provisions of this section. In the event

of such election, the value of the property transferred shall be determined by valuing each item as of the date one year after decedent's death, except that:

\* \* \*

"Nothing in this section shall be construed to affect the requirements contained in this article relating to the filing of returns, and relating to the payment of tax within the times specified to secure discount or avoid penalties.

"In the event the application to the property transferred of the optional valuation date herein provided shall result in a tax liability smaller or greater than the tax heretofore determined, it shall be the duty of the inheritance tax commissioner to file with the county court a corrected appraisement and assessment which shall be subject to review as provided by law. Refunds of amounts of tax theretofore paid in excess of the tax liability under such optional valuation shall be made in the same manner as refunds of amounts erroneously paid. Additional amounts due shall bear interest as provided in sections 138-4-33 and 138-4-35."

Smith died on December 16, 1956, and his will was admitted to probate on February 11, 1957. The Bank was appointed executor on February 13, 1957, and within a short time thereafter filed an inheritance tax application setting forth the value of the properties of the estate as of the date of the death of Smith. Several days after December 16, 1957, which was the anniversary date of Smith's death, the Bank began acquiring information necessary for the ascertainment of the value of the property of the estate as of one year after said date of death.

An amended or supplemental tax application was filed sometime in the fore part of March 1958. This amended or supplemental inheritance tax application was rejected by the commissioner because no written notice of election was filed within the thirteen-month period.

Because of the difficulty in determining the value of two substantial assets of the estate, the Bank alleged and

the court found that the Bank did not and could not "within thirteen months following the date of death" ascertain the value of said estate "as of one year after said date of death, and that [the Bank] was justified in not making an election within said thirteen months"; that the Bank would have had to guess "or flip a coin" to determine which might be the better date of valuation, thereby possibly depriving the estate of property in violation of federal and state due process. The trial court also held that the statute requiring the giving of written notice of the election within thirteen months after death of the decedent is directory and not mandatory. The court thereupon directed that the State "receive and accept the amended return" and revalue the assets.

Abridging the problems presented, we can say that involved in this case are questions of whether the provisions of the "optional valuation" statute concerning time and manner of election to act are mandatory or directory, and if mandatory, whether they violate the due process clauses of the state and federal constitutions.

Is the "optional valuation" section couched in terms which are imperative or directory? This is the principal legal issue presented to us for determination. The Bank contends that the section is directory; the state, that it is mandatory.

At the outset it should be observed that the compass for construction is greatly confined because of the unambiguous language used in the section. Since the phraseology is plain, direct and unequivocal, reliance on rules of statutory interpretation other than those applicable to ambiguous enactments has been had. These rules are more or less mechanical in operation, and we shall tabulate first those invoked by the Bank.

It is said by the Bank that where a statute contains directions for the doing of certain acts within certain times without a prohibition against their being done later, it is usually deemed to be directory. *Christgau v. Fine,* 223 Minn. 452, 27 N.W. (2d) 193. Another rule

cited is to the effect that where an act prescribes a mode or action to be pursued which is not of the essence of the thing to be accomplished but rather relates to a matter of convenience, it is directory. *Enid v. Champlin Refining Co.,* 112 Okla. 168, 240 Pac. 604. Also suggested is the rule that a remedial measure "should receive a liberal interpretation so as to advance the remedy." *Fee v. Brown,* 17 Colo. 510, 30 Pac. 340. Too, a provision which directs the performance of an act, the failure of which results in no injury or prejudice to the substantial rights of interested persons, is usually regarded as directory. *State v. Miller,* 32 Wash. (2d) 149, 201 P. (2d) 136. Finally, it should be inferred from the contrary that an act which provides no penalty for a failure to observe it should be construed as directory. *Rosenfield v. Vosper,* 70 Cal. App. (2d) 217, 160 P. (2d) 842.

An analysis of the parts and of the whole of the "optional valuation" section, we believe, discloses a mandatory guide for those who would avail themselves of its advantages. The section is so drafted that its peremptory terms imply that acts permitted to be done in pursuance thereof may not be done in a manner different or at a time later than those provided therein. *In re Roberts' Estate,* 58 Wyo. 438, 133 P. (2d) 492.

"The executor * * * of a decedent *may elect* to accept the provisions of this section * * * " The words "may elect" afford no solace to the Bank. True, they are permissive; but in order to bestow a right to exercise an election as to valuations the section in this respect must be framed in language affording the representative of an estate a choice. In context, these words do not characterize the act as mandatory or directory. In construing these words as giving the section a directory stamp, the trial court was in error.

The section then goes on to show how and when the election is to be exercised, i.e., "by filing with the inheritance tax commission a *written notice* of such election *within thirteen months from the death of such de-*

*cedent.*" (Emphasis supplied.) A written notice is required and this is how the election shall be made. It must be filed within thirteen months, and this is the time within which the election must be made.

Then the section provides that "In event such election shall be made, the executor * * * within fifteen months, or within such further period as the inheritance tax commissioner may fix by written extension, after the date of death of decedent, *shall file* with the commissioner a supplement to the sworn statement required under section 138-4-42, setting forth the values applicable to each item of property included therein as valued under the provisions of this section." (Emphasis supplied.) It should be noted that in the event such election shall be made, the executor shall do certain things. "Such election" refers to a notice in writing made within thirteen months from the death of such decedent. "In event such election shall be made" spells out a prerequisite to the filing of the supplement.

The section continues: "In the event of such election, the value of the property transferred shall be determined by valuing each item as of the date one year after decedent's death * * * " It is only in the event of such election (filing a written notice of such election within thirteen months from the death of such decedent) that a valuation as of the date one year after decedent's death shall be determined.

"In event of such election," as used in the statute, signifies the fulfillment of a condition in order to pursue the course of the statute further. The condition of the statute to be fulfilled is the filing of a written notice of election within thirteen months from the date of death of the decedent. Subsequent action hinges on the performance of prior action.

Such construction of the statute makes inapplicable the rules proposed by the Bank as controlling in this case. Moreover, rules of interpretation which we deem the certain and only guides to follow in arriving

at the right conclusion compel a holding that the section is mandatory.

1. Where a statute bestows an exercisable advantage, it must be executed as outlined in the act and in no other way. *George v. School Dist. No. 24,* 157 Neb. 791, 61 N.W. (2d) 401; *Davis v. Board of Education,* 186 N.C. 227, 119 S.E. 372; *Schaut v. Joint School Dist. No. 6,* 191 Wis. 104, 210 N.W. 270. See *Breedlove v. General Baking Co.,* 138 Kan. 143, 23 P. (2d) 482. "It is a fundamental rule that where statutes confer a new right, privilege or immunity, and prescribe a mode for the acquisition, preservation, enforcement, or enjoyment, such are mandatory, and must be strictly complied with, and, where the statute provides the manner and form in which the right to be enjoyed may be acquired, such provisions are likewise mandatory, and if not complied with, no right exists." *Schaut v. Joint School Dist. No. 6,* supra.

2. "It is a well-settled rule of construction, applicable to tax statutes, that only those provisions enacted for the benefit of the taxpayer are mandatory, while provisions enacted to secure the orderly conduct of business are merely directory." *Skelly Estate Co. v. City and County of San Francisco,* 9 Cal. (2d) 28, 69 P. (2d) 171. See, also, *Tallon v. Vindicator, etc., Co.,* 59 Colo. 316, 149 Pac. 108; Cooley on Taxation (4th Ed.), §510.

3. Where an optional power is granted by the legislature, the exercise of the power must be made "strictly within the limitations prescribed by the legislature." Ryan Twp. School Dist. Amusement Tax, 7 D. & C. (2d) 199, 52 Sch. L. R. 26.

We conclude that the context of the "optional valuation" section, and the rules of construction applicable thereto, compel a determination that we are dealing with a mandatory law. To have the benefit of the act the Bank must have filed a written notice of election within thirteen months of the date of Smith's death.

We next consider the assertion that federal and state due process have been violated because of the difficulty arising from the application of the act in a strict and literal sense. It is said that the legislature has left the Bank to grope in the dark as to the choice of valuation. It asserts that a literal application of the statute pinches the time to the point that it cannot make a considered election and thereby reduces any choice made to a gambling guess, which, if wrong, harms the estate by virtue of a higher tax being imposed.

That hardship arises from the application of an act, or that difficulty attends in trying to comply with its directions, or that onerous tasks are ordained in order to avail oneself of the benefits of an act, are generally not invalidating. *Steinberg-Baum & Co. v. Countryman,* 247 Iowa 923, 77 N.W. (2d) 15; *McElhone v. Geror,* 207 Minn. 580, 292 N.W. 414; *State ex rel. v. Crescent Cotton Oil Co.,* 116 Miss. 398, 77 So. 185; *Stouffer v. Crawford* (Mo.), 248 S.W. 581; *Hill v. Kusy,* 150 Neb. 653, 35 N.W. (2d) 594; *Vermont Elec. Power Co., Inc. v. Anderson,* 121 Vt. 72, 147 A. (2d) 875; *International Harvester Co. v. Wisconsin Dept. of Taxation,* 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373, in one way or another indicate that such is the law.

Conformity to due process does not require an ideal system, nor does it demand of an act that it provide "against every possible hardship that may befall." *Vermont Elec. Power Co., Inc. v. Anderson,* supra. That a statute may "work hardship does not render it unconstitutional" respecting the rights of persons, or due process of law. *Steinberg-Baum & Co. v. Countryman,* supra. Difficulty in computing, assessing and collecting a tax does not affect the validity thereof. *Stouffer v. Crawford,* supra.

Here we are dealing with a matter of grace granted by the government. An advantage by exercising an election as to valuation is gained by the taxpayer. Such privilege could be withheld entirely, or bestowed under

such conditions as the legislature deems advisable. Gradient severity of conditions may approach complete withdrawal of the exercise of an election, and in such case it could not be said that due process was denied.

The judgment is reversed.