## STATE ex rel. B. SCHAFER and Others v. THOMAS S. BUCKHAM.[1]

May 7, 1909.

Nos. 16,112—(34).

**Certiorari — Review of Material Finding.**

On certiorari to review an order establishing a ditch and directing it to be laid, under chapter 448, p. 641, Laws 1907, the appellate court will not, where a substantial conflict exists, examine the evidence to determine its preponderance; but where a material finding is held unsupported, or is contrary to all the substantial evidence, such finding may be in itself an error of law.

**Objections to Drainage Order.**

This order is sustained, notwithstanding objections that the drainage district was unlawfully "split"; that as good or better drainage could be obtained by other routes at less expense, and with less, if any, damages; that the ditch ordered was not adequate to its responsibilities; and notwithstanding other objections.

Certiorari to review an order of the district court for Steele county,

[1] Reported in 121 N. W. 217.

Buckham, J., establishing a ditch and directing that it be built. The facts are stated in the opinion. Affirmed.

*J. A. & A. W. Sawyer,* for relators.

*Leach & Reigard,* for respondent.

JAGGARD, J.

Pursuant to the decision in Heinz v. Buckham, 104 Minn. 389, 116 N. W. 736, petitioners for a ditch to be laid under chapter 448, p. 641, Laws 1907, filed a prayer for a third hearing upon the original petition. These relators thereupon filed objections to such further hearing. The first of those objections which is specifically here involved was as follows: "The ditch as petitioned for embraces only a portion of the drainage basin naturally drained by the Crane creek named in the petition for said ditch, and no more than a portion of the lands which must eventually be drained into and by means of said Crane creek if the same be enlarged and changed as proposed in said petition; that a large area of such lands which must find an outlet by means of said Crane creek, most of which is slough land and of small value unless drained, is not included either in said petition or in the viewers' report, nor in the engineer's reports, plats, and schedules." The trial court, after the hearing and in due course, granted the petition and directed that the ditch petitioned for be laid. The case was then brought to this court on certiorari to review that order.

The general principles of law whose application is invoked are simple and well-settled. Certiorari is appropriate only where the legal rights of the applicant have been so far invaded as to result prejudicially to him if the judgment or proceedings remain unreversed. Brown, J., in State v. Posz, 106 Minn. 197, 118 N. W. 1014. It reviews only errors of law directly and injuriously affecting the relators. State v. Dunn, 86 Minn. 301, 90 N. W. 772; Minnesota Central Ry. Co. v. McNamara, 13 Minn. 468 (508). Counsel for the relators frankly admit: "It is not claimed that this court will go over the evidence, where any substantial conflict exists, to determine its preponderance; but where a material finding is unsupported, or is contrary to all the substantial evidence, this court can ignore it, since such unsupported finding is in itself an error of

law, and harmful to these relators." It is also true that current practice inclines to decide the questions raised by such a record as is here presented on their merits, rather than upon technicalities, and to endeavor as far as may be to prevent an order for construction, or the actual construction, of a ditch which will fail of its purpose in fact or work injustice in law. We proceed to apply these principles to the considerations urged by relators in the order in which they appear in brief of counsel.

1. The objections addressed to the unlawful splitting of the drainage district involve two contentions. The first is that the court was not authorized by chapter 448, p. 641, Laws 1907, to establish a drainage district so as to include only the lower and eastern portion of the drainage basin, which in nature was single and entire, and so as to omit the upper or western portion. There was testimony tending to show that there was a natural drainage basin, composed of a large number of sections of land, largely marsh and on comparatively the same level, that the water from all these lands naturally tended to flow into this ditch as constructed, and that the ditch established included only the lower portion of these lands. The proposed ditch was designed to drain only part of this area. The second contention is that the specially benefited lands lay partly within and partly without the artificial district established; that the lands within the district, including the relators' land, which did not need drainage, would bear the whole burden; and that the lands lying outside would escape their just proportion. The relators' argument is: "Here we have three classes of landowners within one drainage basin: (1) Those left out here, expressly benefited, who pay nothing; (2) petitioners for the ditch, whose lands are benefited, but not damaged; (3) relators, whose lands are taken to benefit the two former classes, and who receive payment of less than one-half their damages. Disregarding mere forms of words, their lands are taken without just compensation." "The order establishing this drainage violates both the state and national constitutions."

The effect of the first of these two contentions, as we understand them, is that lands which ought to have been drained have not been drained, and under the decision in County of Lyon v. Lien, 105 Minn. 55, 116 N. W. 1017, cannot be drained, by the ditch estab-

lished. It is urged that the only outlet or method of drainage for these lands is through the area here proposed to be drained—the entire basin between the watersheds as its natural outlet, into Crane creek. However, four lakes, lying in the western part of the general area involved, are within four miles of the city of Waseca, which can be drained only by a majority vote of the inhabitants of that city. See last paragraph, section 1, c. 448, p. 642, Laws 1907. Moreover, it is contended that these meandered lakes are used for boating and fishing, and that their drainage is prohibited by the third paragraph of section 1, c. 448, p. 642, Laws 1907. The relators insist that this section is immaterial, that it is not shown these lands cannot be drained while leaving those lakes unaffected, and that the testimony is the reverse. We think this situation as to the upper part of the basin, considered in connection with the relevant testimony to part of which reference will be made, justified the conclusion of the trial court. If the owners of the land within the natural drainage district were complaining of their exclusion from the established district, an entirely different question would be presented. Here the owners of land within the established district are objecting for the protection of lands in which they do not appear to have an interest. Under the circumstances the burden did not rest on the petitioners to show that these lands, within the natural drainage district, but outside of the established district, could not be drained while leaving those lakes unaffected.

The second contention is necessarily the gist of defendant's case, namely, that the established ditch benefited the outlying lands, which contributed nothing to the expense. The assertion of this claim practically destroys the previous contention; for it is not consistent to urge that the outlying lands would not be drained by the proposed ditch, although they ought to have been drained as a part of the natural basin, and at the same time to insist that they would be benefited by the established ditch, but not charged with any part of the cost. Relators' arguments refute each other. The immediate contention we have concluded cannot properly be sustained.

In the first place respondent urges that the question was not raised in the court below, nor determined by it, but was presented for the first time upon this appeal. That part of the formal objection which

has been previously herein set forth is to the effect that the ditch petitioned for embraces only a portion of the natural drainage basin and left the western portion undrained. It certainly did not specifically point out the present objection, namely, that the proposed ditch would specially benefit a large area of swamp land not included in the established district and not charged. Counsel for both parties to this appeal have argued from the briefs in the court below. Such reference is futile. We are controlled by the record before us. The formal objection is apparently inadequate to raise this question. How else it was called to the court's attention is not made clear. It does not appear with any degree of definiteness in the examination of the witnesses. Certain witnesses testified as to having examined all lands affected by the ditch. No cross-examination, including that of the viewer Day, either on cross or recross by the relators, indicates with any positiveness that this point was called to the attention of the court. No request was made to the court to find on this subject. The recital of objections to the findings excludes it. The carefully considered memorandum of the trial court does not refer to nor consider this feature of the case. Even on this state of facts we are not inclined to refuse to consider the questions on their merits. Under local assessment proceedings the preliminary objections are not vital. The time for presenting the formal defenses is when notice for application for judgment is given. In the endeavor to avoid the admitted evils of the assessment system, which have grown up under the early rules laid down by this court, great liberality has been allowed, to determine in advance general questions concerning the validity of preliminary proceedings to establish a ditch. In consequence, much greater meaning must attach to the objections raised at the hearing. The practice, however, has not become clear or established in this regard. Accordingly, however it may be in the future, we come in this case to the consideration of the merits of the controversy, despite the insufficiency of the objection.

In the second place, relators have directed our attention, on the one hand, to much testimony to the effect that, as to lands lying west of the established district, the "ditch as planned is sufficient to drain all the lands up there." It is significant, however, that this part of the watershed would not be drained by this ditch, according to much

of that very testimony, in the absence of tiling. There is at the present time no statutory authority for connecting tile drains with the main ditch; in other words, the benefit does not now exist. The only means by which this could be accomplished under any future law would be by imposing equitable terms upon the landowners who would utilize the ditch. It would be entirely idle for us to speculate how those equitable terms could be made to benefit the relators. Moreover, the relators' testimony as to what lands without the district would be benefited, and to what extent, on examination proves indefinite, unsatisfactory, and was confused by some testimony that part of the western basin would not be drained.

There was an abundance of testimony, on the other hand, tending to sustain the conclusion of the trial court on this point. Among other things, the viewers certified that they had examined and assessed all the lands which would be benefited or damaged, as appeared in the tabular statement attached to their report. That report was received without objection and was not then assailed. The relators insist that the excluded lands were not referred to, nor shown in the petition, in the engineer's plats, nor in any other of the ditch papers, and that they specifically advised the court and counsel of this defect, defeating jurisdiction. That advice is wholly immaterial. We, again, however, are not inclined, at this stage of the development of a new practice, to determine the important practical questions here involved upon the technical failure to impose the proper objections. It would undoubtedly have been good practice to have objected to the report at the time it was proffered, and to have pointed out in full this objection. However this may be, the testimony of the viewers and of the engineers was sufficient to have justified the conclusion of the trial court that the district established included all lands injuriously or beneficially affected by the ditch as against certiorari.

2. The consideration of these two issues, namely, artificial division of a natural basin and the unjust discrimination between the landowners, covers the argument made by the first subdivision of the relators' briefs as we understand it. The second subdivision of that brief we confess to have had difficulty in comprehending. Its major proposition is that the order establishing the ditch violates the state

and the national constitutions.   Counsel points out that the constitutional authority for drainage statutes rests partly on the power of eminent domain, and then proceeds to argue that defendant's lands have been taken (apparently by the power of eminent domain) without just compensation.   In support of this we are referred especially to City v. Consolidated, 190 N. Y. 350, 83 N. E. 299, 16 L.R.A. (N.S.) 335 (in which proceedings were instituted to acquire several pieces of land owned by the gas company), and Mantorville Ry. & T. Co., v. Slingerland, 101 Minn. 488, 112 N. W. 1033, 11 L.R.A. (N.S.) 277, 118 Am. St. 647 (in which land was taken by condemnation proceedings).

It is obvious that these cases have no bearing on present controversies.   Here there are no proceedings to acquire relators' land. The record discloses no such issue whatever.   A creek was being straightened out, and, if this readjustment of the natural watercourse involved the taking of the relators' lands in the literal sense, the relators should have made that issue.   We do not gather, however, that there was any taking, except in the sense that possibly an unjust assessment of benefits and damages resulted.   The relators' immediate argument, we think, resolves itself into the propositions last discussed under the previous question.   Certainly none of the authorities cited—and we have examined them all—justify a reversal. The order establishing the ditch is not, we accordingly conclude, successfully assailed for any reason set forth in the two first propositions in relators' brief.

3. Relators contend that it was proven conclusively that as good or better drainage can be obtained by other routes at less expense and with less, if any, damages.   This is a proposition of pure fact. The relators had two routes surveyed by an experienced engineer, which would drain only a small part of the natural basin.   The ditch established followed the natural drainage afforded by Crane creek.   The court found on this point as follows: "That neither of the two several drains proposed by those opposing the ditch in question, and in support of which they offered evidence, is feasible, or would drain all the lands to be benefited by the proposed ditch, but each would necessarily divert large quantities of water from its natural channel and outlet and discharge the same upon lands lying

in other drainage districts, and that no evidence was offered from which any estimate could be made even [approximating] the cost of the construction of such other proposed ditches." We are of opinion that this finding of fact was for present purposes sufficiently supported by evidence, and that under the circumstances here presented the burden of proof was upon the relators to show the cost of construction of a ditch other than the natural channel and outlet.

4. Relators insist that the ditch ordered is not adequate to its responsibilities. This, also, is clearly a question of fact. The trial court in its memorandum suggests: "It is also quite likely that some of the riparian landowners, whose lands do not need this ditch, and who strongly oppose its construction, have not been awarded sufficient compensation for the damages they are likely to sustain. They, of course, cannot be damaged for the benefit of other landowners, or even of the general public, without full and adequate compensation for any loss they may sustain; and for a fair award of such compensation the law affords them an ample hearing apart from the one already had before the viewers." No jurisdictional error is shown on this point.

5. Relators urge that there was error in ordering an offset of all benefits, dollar for dollar, against damages. The error in this regard has been corrected by subsequent order and decision. Relators appear to be satisfied with the present order, but insist that they were justified in assigning the error that the correction should be considered in connection with costs and disbursements. This is a matter to which the court will pay attention at the proper time. On the record before us no error appears in the assignment.

Affirmed.