# STATE EX REL. RICHARD F. SPURCK v. CIVIL SERVICE BOARD AND OTHERS.[1]

May 14, 1948.

No. 34,555.

[1]Reported in 32 N. W. (2d) 574.

*Briggs, Gilbert, Morton, Kyle & Macartney,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *William C. Green,* Special Assistant Attorney General, for respondents.

PETERSON, JUSTICE.

Petitioner brought this proceeding to reverse the decision of the state civil service board on his appeal from an order affirming the state civil service director's allocation of him to class attorney I in the division of social welfare. He claims that he was entitled as a matter of law to allocation to class attorney IV, a higher and better paid position than class attorney I, and he bases the claim of right to allocation to class attorney IV upon the fact that on April 22, 1939, his status as an attorney in the state relief agency was equivalent to class attorney IV under the civil service; that by transfer of the functions of the relief agency to the division the latter became by operation of law a continuation of the former; and that by statute he was blanketed into the division as of the date mentioned with permanent civil service status in the position he then had, viz., that of class attorney IV. Petitioner alleges that the civil service board not only denied him his procedural right to a trial *de novo* on the appeal, but also denied him his substantive rights to the position to which he was entitled by statute. The board made its records part of its return. From the order quashing the writ and affirming the board's decision, petitioner appeals.

The history of the efforts of petitioner to obtain his civil service rights and the denial thereof by the state civil service authorities appears from the decisions of this court in State ex rel. Spurck v. Civil Service Board (No. 34,619), decided this day, 226 Minn. 253, 32 N. W. (2d) 583, and State ex rel. Spurck v. Pennebaker, 215 Minn. 79, 9 N. W. (2d) 259. Suffice it to say that there have been

several hearings before the civil service authorities, at least four trials in the district court, and three appeals to this court.

From 1934 to April 22, 1939, petitioner was employed as an attorney by the state relief agency, whose functions were transferred to the division of social welfare by the so-called reorganization act, which provides (M. S. A. 15.04) that such a transfer of one agency to another constitutes a "continuation" of the former. M. S. A. 43.34 provides:

"* * * that honorably discharged veterans of past wars and other persons enumerated in section 43.30 holding offices or employments within the classified service on the effective date of this chapter are hereby given a permanent classified civil service status as of the effective date of this chapter [April 22, 1939], and shall thereafter be subject to and protected by the provisions of this chapter * * *."

Petitioner is an honorably discharged veteran of World War I and as such entitled to the benefits and protection of the last-cited statute.

There are four classes of attorneys, the lowest of which is No. I and the highest No. IV. From the facts disclosed here, it appears that on and prior to April 22, 1939, the date from which petitioner was given by the statute permanent civil service status in the position he then held, his status was the same as that of class attorney IV under the civil service classification. The nature of his work, duties, responsibilities, and status in the agency were precisely the same. Because that was true, petitioner was entitled to allocation by the civil service director to class attorney IV. After the civil service act became effective, petitioner continued to occupy the same status and perform the same duties in the division of social welfare. In June 1939, the division employed one Metcalf, who was not an honorably discharged veteran of a past war, as an attorney to perform legal work of the same nature as that performed by petitioner. Thereupon it became necessary to allocate Metcalf to a position in the classified service. He was allocated to class attorney IV.

During the pendency in this court of an appeal in a mandamus proceeding to compel the civil service director to allocate petitioner to the class to which he was entitled (State ex rel. Spurck v. Pennebaker, 215 Minn. 79, 9 N. W. [2d] 259), he was allocated to class attorney II, and thereafter he was wrongfully discharged. After the discharge had been reversed on certiorari by the district court, he was allocated to class attorney I. After the director of civil service had allocated petitioner to class attorney I, he duly appealed to the civil service board under M. S. A. 43.12, subd. 3, which reads:

"The director of the civil service shall allocate each office, position or employment in the classified civil service to one of the grades and classes within the classification, subject to an appeal to the board by an employee immediately affected at any time within 30 days following notice to him of his allocation, * * *."

At the same time he requested a hearing before the commission, with all the incidents of a trial, including a hearing, the subpoena of witnesses, taking of oral testimony, representation by counsel, argument, and the like. The request was denied. In lieu thereof, the board advised petitioner that he had leave to submit written statements of witnesses for its consideration, but without hearing and argument. On November 1, 1943, the board's action as shown by its minutes was:

"The Acting Director referred to the Board all the files, records and other material referring to the allocation appeal of Mr. Richard F. Spurck. The Board then privately[2] considered, discussed and determined its action in this matter without the presence of either Mr. Spurck or his representatives or any staff member of the Civil Service Department. After full consideration of Mr. Spurck's appeal and all records, files and evidence submitted in connection with his allocation appeal, the Board unanimously affirmed the allocation of the position occupied on April 22, 1939 to the class Attorney I."

Thereupon, petitioner instituted the instant proceeding in certiorari.

[2]Private meetings of the board violate the provisions of M. S. A. 43.03, requiring its meetings to be public.

The questions for decision, presented by petitioner's contentions, are: (1) Whether the civil service board by denying the employe appellant a hearing, with all the incidents of a trial, denied him the hearing on appeal to which he was entitled under M. S. A. 43.12; (2) whether an employe's civil service rights are entitled to protection of the law even though such rights are not property; and (3) whether as a matter of law he was entitled to allocation to class attorney IV.

1. The word "appeal" like many others is one of variable meaning, as the cases cited herein show. Where, as here, the word is used in a statute granting a right of "appeal," its meaning depends upon legislative intention, which is to be ascertained by the same rules as in other cases. An "appeal," strictly speaking, is a proceeding by which a case is removed from a lower court to a higher one for trial there *de novo*, either upon the record made in the lower court or upon evidence newly introduced. Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. (2d) 8; United States v. Goodwin, 11 U. S. (Cranch) 108, 3 L. ed. 284; Commr. of Corporations, etc., v. J. G. McCrory Co. 280 Mass. 273, 182 N. E. 481; Cino v. Driscoll, 130 N. J. L. 535, 34 A. (2d) 6; Richmond v. Henderson, 48 W. Va. 389, 37 S. E. 653; 3 Wd. & Phr. 684, *et seq.* In the Cino case, the court said (130 N. J. L. 537, 34 A. [2d] 8):

"The meaning of the word 'appeal' in its 'original and strictly technical sense' was a proceeding which was introduced into equity practice from the 'civil law' and 'by which the whole cause was removed from a lower to an appellate court' and was there tried *'de novo'* upon evidence newly introduced."

As said in the Richmond case (48 W. Va. 404, 37 S. E. 660):

"* * * Now, everybody knows that the legal signification of 'appeal,' unless the context otherwise manifests, means an appellate process which opens the former judgment and verdict, and sends the case to a higher court for trial *de novo* upon the same facts, or new facts, regardless of the former trial."

.The word "appeal" is not always used in statutes with its strict meaning. Since the word should be given the meaning intended by the legislature, we should ascertain such meaning here. Where tokens of a contrary legislative intent are present, the meaning which they manifest should be adopted. For example, our so-called appeal in a civil action under M. S. A. 605.01 to 605.23 from the district court to this court is, as has been said, because of statutory provision, an appeal governed by the principles applicable to a writ of error. State ex rel. City of Duluth v. N. P. Ry. Co. 99 Minn. 280, 109 N. W. 238, 110 N. W. 975; Kells v. Nelson-Tenney Lbr. Co. 74 Minn. 8, 76 N. W. 790; 1 Dunnell, Dig. & Supp. §§ 280, 282. In substance, such an appeal is a writ of error. But, so long as we have regard for the substance of things and know what we are talking about, there is no harm in calling it an "appeal." See, Warren v. Indiana Tel. Co. 217 Ind. 93, 26 N. E. (2d) 399; Wingfield v. Neall, 60 W. Va. 106, 54 S. E. 47, 116 A. S. R. 882, 10 L.R.A.(N.S.) 443, 9 Ann. Cas. 982. Appeals under M. S. A. 525.71 to 525.731 from the probate to the district court and under M. S. A. 532.37 to 532.50 from a justice of the peace to the district court (in certain cases under special laws or home rule charters such appeals are to the municipal court) upon questions of law and fact are appeals in the strict and original sense, because they are tried *de novo* in the appellate court.

Strictly speaking, appeals refer to appellate proceedings in judicial proceedings, and, because that is true, the use of the word "appeal" in connection with an administrative proceeding is not accurate. The use of the word "appeal" in referring to administrative review proceedings is adopted partly because of the analogy between judicial and administrative review procedures and partly because of want of language apt for denominating it. And in statutes relating to administrative proceedings as well as those of a judicial nature the word "appeal" is used with different meanings. As always, the meaning in the particular statute depends upon the legislative intent. As in the case of statutes governing judicial proceedings, the word "appeal" in a statute governing administrative

proceedings will be deemed, in the absence of tokens of a contrary legislative intention, to be used with its strict and ordinary meaning. City of Rockford v. Compton, 115 Ill. App. 406; Babcock v. City of Grand Rapids, 308 Mich. 412, 14 N. W. (2d) 48. Where a contrary legislative intention is manifested, it will be given effect, as in the case of appeals from a referee to the industrial commission under a statute assimilating the rules under the statute governing ordinary appeals in civil actions (Barlau v. Minneapolis-Moline P. I. Co. 214 Minn. 564, 9 N. W. [2d] 6), and of so-called appeals which lack the attributes of judicial appeals and are nothing more than administrative procedures designed to facilitate and expedite action with rehearing and review within the administrative setup of which they are a part (Christgau v. Fine, 223 Minn. 452, 27 N. W. [2d] 193).

In the instant case, the word "appeal" is, for lack of tokens of a contrary legislative intention, to be deemed to be used in its strict and ordinary meaning. In City of Rockford v. Compton, *supra,* the question arose whether a removed employe was entitled to a trial *de novo* upon "appeal" under a statute which did not prescribe how the "appeal" should be tried. In an elaborate and well-considered opinion the court said (115 Ill. App. 411, 414) :

"* * * The term 'appeal,' in its original, technical and appropriate sense, meant the removal of a suit from an inferior court, after final judgment therein, to a superior court, and placing the case in the latter court to be again tried *de novo* upon its merits, just as though it had never been tried in the inferior court. * * *

* * * * *

"* * * We are of opinion that when this statute granted an appeal without requiring the evidence to be preserved and transmitted some greater remedy was intended, and that must have been a retrial of the charges."

In Babcock v. City of Grand Rapids, *supra,* it was held that on appeal to a city civil service board by a discharged employe he was entitled to a trial *de novo*. There the court reviewed many authorities and said (308 Mich. 415, 14 N. W. [2d] 49) :

"We believe that when the word 'appeal' is used without any limitations as to the nature or method of review, in a statute or charter, it means a trial *de novo*."

And so it is here. As in the cited cases, the statute is silent as to how the appeal shall be tried, and that plainly means a trial with all the incidents of one.

Aside from any requirement of due process, the right to a trial includes that of being heard, production of witnesses and documents, the taking of evidence, examination and cross-examination of witnesses, representation by counsel, presentation of arguments, decision upon the merits, and everything incident thereto. As said in In re Trust Created by Will of Enger, 225 Minn. 229, 237, 30 N. W. (2d) 694, 700:

"* * * A requirement of 'hearing' in judicial proceedings, aside from any constitutional requirement of due process, by common consent presupposes a proceeding before a competent tribunal for the trial of issues between adversary parties, the presentation and consideration of proofs and arguments, and determinative action by the tribunal with respect to the questions raised by the issues presented."

Decisions involving due process are pertinent, however, as showing what the right to a hearing involves. And as said in Interstate Commerce Comm. v. Louisville & N. R. Co. 227 U. S. 88, 93, 33 S. Ct. 185, 187, 57 L. ed. 431, 434:

"* * * manifestly there is no hearing when the party does not know what evidence is offered or considered and is not given an opportunity to test, explain, or refute. * * * All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding; * * *."

See, Juster Bros. Inc. v. Christgau, 214 Minn. 108, 7 N. W. (2d) 501; Morgan v. United States, 304 U. S. 1, 58 S. Ct. 773, 999, 82 L. ed.

1129; Londoner v. City and County of Denver, 210 U. S. 373, 28 S. Ct. 708, 52 L. ed. 1103.

The board has the power under M. S. A. 43.07 to issue subpoenas to compel the presence of witnesses and the production of proofs and is required to issue subpoenas at the request of parties to the proceedings.

Our conclusion is that petitioner's appeal under M. S. A. 43.12 entitled him to a public trial *de novo* before the state civil service board with all the incidents of trial which have been mentioned; and that the board erred in denying him such a trial. This alone requires a reversal here.

2. The board urges that an employe's civil service rights are not property, and therefore a denial of those rights by the board is justifiable as not involving a taking of property without due process.

True, petitioner's job rights are not property entitled to the protection of due process, but they are rights entitled to *protection* of the law. State ex rel. Spurck v. Pennebaker, 215 Minn. 79, 9 N. W. (2d) 259, *supra*.

As said in State ex rel. Kane v. Stassen, 208 Minn. 523, 527, 294 N. W. 647, 649:

"As a state employe relator did not have a vested right in his employment. Veterans, like others, could have been deprived of their positions by legislative abolition, and even if this were done after January 31, 1939, there would be no cause for relator to complain. But the fact cannot be escaped that by the civil service law the veteran's employment was expressly recognized and preserved by granting a permanent civil service status without a probationary period. Had relator not been discharged he would have been blanketed into the civil service on April 22, 1939, by virtue of [Mason Minn. St. 1940 Supp.] § 254-86. By the simplest concept of justice, he is entitled to be placed in the same position as he would have been had he not been discharged improperly."

3. The function of the court on certiorari in reviewing the determination of an administrative agency is to decide questions of law raised by the record, but not disputed questions of fact on con-

flicting evidence. Where there is no evidence to support an administrative finding or the evidence as a matter of law compels a finding contrary to the administrative one, as where the evidence was all one way and the administrative agency found to the contrary, the finding so made constitutes error of law, which it is the duty of the court to reverse. State ex rel. Schafer v. Buckham, 108 Minn. 8, 121 N. W. 217; Bump v. District Court, 232 Iowa 623, 5 N. W. (2d) 914; State ex rel. Schiewitz v. Wisconsin R. E. Brokers Board, 188 Wis. 632, 206 N. W. 863; 14 C. J. S., Certiorari, § 172. See, State ex rel. Hardstone B. Co. v. Dept. of Commerce, 174 Minn. 200, 219 N. W. 81; State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759. In State ex rel. Schiewitz v. Wisconsin R. E. Brokers Board, *supra,* the court held that a decision of an administrative agency contrary to all the evidence was an error of law. The syllabus summarizes the opinion:

"Though the findings of the board will not be disturbed on *certiorari* if there is any competent evidence to sustain them, where the evidence is all one way the board cannot disregard it, and its decision contrary to the evidence will be reversed."

The records made part of the return show conclusively that on April 22, 1939 (the date on which petitioner was blanketed into the civil service), petitioner's position as attorney in the state relief agency was the same as class attorney IV under the civil service. No other view is permissible. Because that is true, the board committed an error of law in allocating him to class attorney I. At the bottom is class I, where the legal work is of an elementary nature usually involving one narrow field of law. At the top is class IV, where the work involves "major administrative responsibility for legal counsel, advice and service rendered by the legal division of a large department" and involves the "highest degree of professional and administrative responsibility in planning, assigning and reviewing the work of a large staff and in the capacity of chief counsel to departmental administrative officials having large-scale operations which are dependent on continuing judicial proceedings." In between are classes II and III, representing a graduation in the

respects mentioned from class I to class IV. The position held by petitioner on April 22, 1939, could come under only one of the four classifications. No claim is made here that it could come under class attorney III, and, because that is true, that class need not be further considered. Class IV involves higher duties, responsibilities, and professional qualifications than classes I and II. Among other things, class IV involves administrative responsibility and service as chief counsel to a departmental official having large-scale operations which are dependent on continuing judicial proceedings as petitioner's position as attorney in the state relief agency did and classes I and II did not. Hence, petitioner was entitled to have his position classified as class attorney IV and to be allocated thereto. The record shows that the civil service officials acted arbitrarily with respect to the matter. To begin with, they assigned his position not to one classification as required by law, but to at least two classifications. After petitioner had established by mandamus in State ex rel. Spurck v. Pennebaker, 215 Minn. 79, 9 N. W. (2d) 259, his right to classification and allocation, he was assigned to class attorney II, while Metcalf, who performed identical service, was assigned to class attorney IV. Then, when the district court reversed petitioner's discharge, he was assigned to a still lower class, namely, class attorney I. And, on top of all that, he was not given reëmployment, but was put on a waiting list, where employment was contingent on creation of a position and funds for it made available. Plainly, petitioner was penalized for seeking and obtaining judicial vindication of his rights. By classifying Metcalf's position as class attorney IV and allocating him thereto, the board construed its own rules in accordance with the view that petitioner's position also should be so classified. If anything, the evidence in his case was not as compelling as it was in favor of petitioner. The construction and application by the board of its own rules in Metcalf's case is persuasive that a similar construction and application should also be made in petitioner's case. Quite aside from the fact that a consistent and impartial administration of the civil service law requires that like allocation be given petitioner, the mandate of M. S. A. 43.34,

that the civil service status rights of veterans blanketed into the civil service shall be "protected" by the civil service law, can be given effect only by according to petitioner the same civil service rights as are accorded to others who are not only junior in the service, but who have no veterans' rights at all.

4. It is sometimes said that on certiorari the judgment should either affirm or reverse (quash) the proceedings brought up for review. This is not a strictly accurate statement of the rule. A remand by the court to an administrative agency upon reversal of the latter's determination does not dismiss or terminate the administrative proceedings. The administrative agency is bound by the court's decision on questions of law. Ford Motor Co. v. N. L. R. B. 305 U. S. 364, 59 S. Ct. 301, 83 L. ed. 221; 42 Am. Jur., Public Administrative Law, §§ 245-249. Where the judgment is one reversing the determination of an administrative agency, the case should be remanded for further proceedings according to law. While questions of fact and of policy are for administrative and not judicial determination, the courts have the power to determine questions of law. For example, while the court may set aside as confiscatory a public utility rate, it may not prescribe the rate, because rate-fixing is not a judicial function. Central Kentucky Nat. Gas Co. v. Railroad Comm. 290 U. S. 264, 54 S. Ct. 154, 78 L. ed. 307. Where the court's decision determines the rule of law governing subsequent administrative proceedings, its decision is not a mere "gesture," but rather a final and indisputable basis of action in all further proceedings. Federal Power Comm. v. Pacific P. & L. Co. 307 U. S. 156, 160, 59 S. Ct. 766, 768, 83 L. ed. 1180, 1183; Interstate Commerce Comm. v. Baird, 194 U. S. 25, 24 S. Ct. 563, 48 L. ed. 860. As said by Mr. Justice Roberts speaking for the court in International Union, etc., v. Eagle-Picher M. & S. Co. 325 U. S. 335, 340, 65 S. Ct. 1166, 1168, 89 L. ed. 1649, 1654:

"Finality to litigation is an end to be desired as well in proceedings to which an administrative body is a party as in exclusively private litigation. The party adverse to the administrative body is entitled to rely on the conclusiveness of a decree entered by a court

to the same extent that other litigants may rely on judgments for or against them. * * *

* * * * *

"Administrative flexibility and judicial certainty are not contradictory; there must be an end to disputes which arise between administrative bodies and those over whom they have jurisdiction."

See, also, People ex rel. Forest Comm. v. Campbell, 156 N. Y. 64, 50 N. E. 417 (reversing 22 App. Div. 170, 48 N. Y. S. 183) ; Dryden v. Swinburn, 15 W. Va. 234, 273 ; 14 C. J. S., Certiorari, § 181.

Here, if there were a remand to the board, there would be no fact question for its determination as to whether petitioner should be allocated to class attorney IV. Petitioner's right to be so allocated appears as a matter of law from the board's records. If the board made a different allocation upon remand, it would be an error of law which would necessitate setting it aside.

5. Ordinarily, reversal would require a trial before the civil service board in accordance with the views herein expressed. But there is no occasion here for such a trial, because this proceeding in certiorari establishes petitioner's rights, and the pending mandamus proceeding affords a remedy for their enforcement. While the court cannot in a certiorari proceeding direct the administrative agency upon reversal of its determination as to the precise course it shall pursue, even though the court's decision is binding upon the agency (Federal Power Comm. v. Pacific P. & L. Co. 307 U. S. 156, 59 S. Ct. 766, 83 L. ed. 1180, *supra*), it can by writ of mandamus compel performance of a judicially determined mandatory duty, as we have decided today in the companion mandamus action. State ex rel. Jenkins v. Ernest, 197 Minn. 599, 268 N. W. 208. See, Personal Loan Co. v. Personal Finance Co. 213 Minn. 239, 6 N. W. (2d) 247. Where the interests of justice so require, separate judicial proceedings may be integrated so as to afford the parties the relief to which the law entitles them. This proceeding in certiorari should be treated as ancillary to the one in mandamus, to the end that the right established here may be enforced there. Certiorari may be employed as "an auxiliary process to enable the court to obtain further informa-

tion in respect to some matter already before it for adjudication." L. N. A. & C. Ry. Co. v. Louisville Trust Co. (C. C.) 78 F. 659, 661. Certiorari may be used as ancillary to mandamus, and where it is mandatory rights established on certiorari will be enforced by mandamus. Pullen v. Pullen, 161 La. 721, 109 So. 400; 14 C. J. S., Certiorari, § 3.

Our conclusion is that the order denying a new trial should be reversed; that upon remittitur petitioner shall be entitled to an order reversing the determination of the civil service board upon the ground that it is the duty of the board to allocate him to class attorney IV; and that the duty to make the allocation may be compelled in the pending mandamus proceeding.

Reversed with directions to proceed in accordance with the opinion.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.

---

[1]Reported in 32 N. W. (2d) 583.