241 N.W.2d 310 (1976)
MINNESOTA DEPARTMENT OF HIGHWAYS and Ray Lappegaard, Commissioner, et al., Respondents.
v.
MINNESOTA DEPARTMENT OF HUMAN RIGHTS, Appellant-Respondent. and
Garry DeYOUNG, Respondent-Appellant,
v.
MINNESOTA DEPARTMENT OF HUMAN RIGHTS, and Samuel L. Richardson, Commissioner of Human Rights, Appellants-Respondents.
Nos. 45624, 45631.
Supreme Court of Minnesota.
April 9, 1976.
*311 Warren Spannaus, Atty. Gen., Richard L. Varco, Jr., Sp. Asst. Atty. Gen., St. Paul, for appellant, Minn. Dept. of Human Rts.
Ramier, Soules & Hynes and Rodney M. Hynes, Minneapolis, for Minn. Dept. of Highways and others, respondents.
Gary DeYoung, pro se.
Heard before OTIS, PETERSON and SCOTT, JJ., and considered and decided by the court en banc.
PER CURIAM.
These are consolidated appeals by Garry DeYoung and the Minnesota Department of Human Rights. The Department of Human Rights filed a complaint against the Minnesota Department of Highways on behalf of DeYoung alleging that DeYoung's employment with the Department of Highways had been suspended and terminated because of religious discrimination. The hearing examiner appointed by the commissioner of human rights found that the Highway Department had violated Minn.St. c. 363 and ordered DeYoung reinstated with damages. The examiner found, however, that DeYoung did not mitigate damages by seeking alternative employment; consequently, the examiner reduced the amount of damages by $2,500 on the condition that the department reemploy DeYoung before February 1, 1974. Both the Highway Department and DeYoung petitioned for review of the examiner's decision, and the Department of Human Rights filed a cross-petition. The petitions were consolidated for hearing before the Ramsey County District Court. Following that hearing, the court ordered the hearing examiner's findings and order reversed, resulting in these consolidated appeals.
DeYoung began working for the Department of Highways as an information writer *312 in May 1969 and remained in that job, except for a suspension in December 1971, until his dismissal effective March 3, 1972. At the time of his hiring, DeYoung's atheistic beliefs were known to his superiors in the department.
DeYoung's job involved the writing of articles and the distribution of information on the department. The material he prepared was released to the public in a weekly departmental publication entitled Minnesota Highway News.
According to the testimony of his superiors, DeYoung's behavior changed beginning in the spring of 1971. Complaints were recorded regarding his writing and demeanor. Some of DeYoung's articles were rejected as inappropriate or unsatisfactory. In the fall of 1971 the project director of the Minnesota Valley Restoration project accused DeYoung of proselytizing during a field trip to research an article on the project.
On December 22, 1971, the public information office held a Christmas party in the office. Protesting the playing of religious music at the party, DeYoung switched off the religious music and switched on his own recorder with secular music. An argument developed between DeYoung and his superior, Dwight Bonin, when Bonin told DeYoung to switch off his music. Bonin then suspended DeYoung from December 22, 1971, until January 3, 1972.
Following DeYoung's return to work in January, the relationship between DeYoung and all his supervisors deteriorated further. DeYoung's job performance was unproductive. Articles which DeYoung submitted were not returned to him. Bonin was unable to communicate with DeYoung. On February 18, 1972, Assistant Highway Commissioner Francis Marshall, Bonin, and DeYoung had a meeting to discuss DeYoung's job performance. During that week, Commissioner Ray Lappegaard, Marshall, and Bonin reviewed DeYoung's activities. Commissioner Lappegaard decided to terminate DeYoung because his job performance was unsatisfactory.
DeYoung received a written notice of termination sent to him on February 25, 1972. DeYoung filed a charge of religious discrimination against the department on February 29, 1972.
1. The first issue presented is whether or not the district court acted properly in reversing the hearing examiner's order.
The scope of judicial review for an administrative agency decision is set forth in Minn.St. 15.0425:
"In any proceedings for judicial review by any court of decisions of any agency as defined in Minnesota Statutes, Section 15.0411, Subdivision 2 (including those agencies excluded from the definition of agency in section 15.0411, subdivision 2) the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
"(a) In violation of constitutional provisions; or
"(b) In excess of the statutory authority or jurisdiction of the agency; or
"(c) Made upon unlawful procedure; or
"(d) Affected by other error of law; or
"(e) Unsupported by substantial evidence in view of the entire record as submitted; or
"(f) Arbitrary or capricious."
Cases interpreting the above statute have established that a court may reverse an agency's findings when they are not supported by the evidence. State ex rel. Spurck v. Civil Service Bd., 226 Minn. 240, 32 N.W.2d 574 (1948).
In a memorandum, the trial court explained the reasons for its order reversing the hearing examiner's determination:
"Applying these principles to the Findings of Fact, Conclusions of Law and Order, being cognizant of the narrow scope of judicial review, and the burden of proof to overturn them, nevertheless leads the undersigned to the following conclusions. In applying the `substantial *313 evidence' test, they are deemed without adequate support. It would be a manifest injustice to uphold them. They are beyond the range where it is simply a matter which of contrary inferences may be better supported. If a jury verdict had been similar to the Findings it would be my clear duty to set it aside.
"As to their `arbitrary and capricious' nature, they clearly represent the will and not the judgment of their author.
"Nowhere in the Findings is there mention of the very sensitive nature of DeYoung's position where he was to reflect the policy and the position of the Commissioner and the department in a wide area.
"Nor is there mention of the change in his behavior commencing in the spring of 1971, which was apparent to both his colleagues and supervisors.
"When DeYoung commenced his employment in the department in 1969, his atheistic views were well known and posed no difficulties, either in his job performance or in his acceptance by others who worked with him in the department.
"What caused a change in his behavior toward others with whom he worked, and in the writings he authored for distribution as Highway Department informational pieces is a question only experts in other disciplines could venture an answer. Nonetheless, the record is replete with many instances wherein the only fair analysis of his conduct and attitude would be that of aggressively offensive behavior exhibited by an outspoken advocate of atheism wholly intolerant of those foolish enough to admit to other views on the existence of a Deity. He was, indeed an argumentative, proselytizing polemicist. None of this is dealt with in the Findings!
"The informal Christmas party held December 22, 1971, in the Public Information Office was disrupted by the actions of DeYoung then exhibiting the traits described above. He was suspended by his superior for the period from December 22, 1971, to January 3, 1972. Without reciting in detail the evidence adduced at the hearing, (which subject occupied considerable interest and concern) suffice it to say that DeYoung deliberately caused a confrontation which made the suspension the only viable course of action for his superiors to take."
The trial court in effect found that DeYoung was not fired because of any animosity to his atheistic views but because of his unsatisfactory job performance. The testimony of DeYoung's superiors, DeYoung's offensive conduct in the office and in the field, his expressed attitude toward other workers, and his unproductive job performance for several weeks prior to his termination adequately support the trial court's determination.
2. A peripheral issue is whether the Department of Human Rights has standing to seek judicial review of the decision of its own hearing examiner.
The agency proceeding involved here was initiated by DeYoung's charge filed pursuant to Minn.St. 363.06, subd. 1. The hearing on the charge was conducted pursuant to Minn.St. 363.071, subd. 1, which provides:
"The commissioner shall appoint from the board a three man hearing panel, at least one of whom shall be a lawyer, or an examiner to hear the complaint. The hearing shall be conducted at a place designated by the commissioner, within the county where the unfair discriminatory practice occurred or where the respondent resides or has his principal place of business. The hearing shall be conducted in accordance with Minnesota Statutes 1965, Sections 15.0418, 15.0419, 15.0421, 15.0422, and is subject to appeal in accordance with Section 15.0424."
The activities of the examiner of the Department of Human Rights in this case are similar to those of the administrative board in In re Getsug, 290 Minn. 110, 186 N.W.2d 686 (1971). In Getsug, the State Board of Registration for Architects, Engineers, and Land Surveyors found an engineer guilty of the unauthorized practice of architecture and revoked his certificate of registration *314 as an engineer in proceedings initiated by the St. Paul Chapter of the American Institute of Architects. This court said:
"* * * [T]here is a line of authority which declares that administrative agencies have standing to appeal where they perform a policy-making function and represent a public interest in the proper enforcement of the law being administered and where the public, as well as private parties, has an interest in upholding the action of the agency. The decisions of our court, however, which follow the majority view, are to the effect that, where no statute provides otherwise, an agency which functions in a judicial or quasi-judicial capacity is without right to appeal since, in such a case, the agency is in no different position from a court or judge which has rendered the decision." 290 Minn. 114, 186 N.W.2d 689.
This court further noted:
"* * * It has been held that it is a judicial function to hear a case pending between adverse parties, to apply the law to the facts, and to make and render a judgment determining the rights of the parties." 290 Minn. 115, 186 N.W.2d 689.
In the present case the examiner heard testimony, made findings of fact and conclusions of law, and issued an order requiring reinstatement and an award of damages to DeYoung. Such proceedings are essentially judicial; therefore, according to the rule in Getsug, the Department of Human Rights lacks standing to appeal the decision of its own hearing examiner to the district court.
The Department of Human Rights notes that Minn.St. 15.0424, subd. 2(c), requires that every person served with a petition for judicial review of an agency decision who desires to participate in the review proceedings is required to serve upon the petitioner "a notice of appearance stating his position with reference to the affirmance, vacation, reversal or modification of the order or decision under review." The department further notes that Minn.St. 15.0424, subd. 2(b), provides that "the agency * * * shall have the right to participate in the proceedings for review." The department argues that its activity at the trial court level was only a response to the petition of the Department of Highways. This argument is inconsistent with the nature of the allegations made by the Department of Human Rights in its cross-petition in which it alleged errors of law in the order of its own hearing examiner and requested a modification of that order in its prayer for relief.
In Minnesota Water Resources Bd. v. County of Traverse, 287 Minn. 130, 177 N.W.2d 44 (1970), this court refused to broadly interpret Minn.St. 15.0424, subd. 2(b), and specifically interpreted our Administrative Procedure Act to exclude any authority for a participating agency to seek a judicial review of its own decision. The court held:
"* * * [N]owhere in the statute is there express authority for the Water Resources Board to perfect, or participate in, appeals from its own decisions." 287 Minn. 132, 177 N.W.2d 46.
The Department of Human Rights further argues that its commissioner should be considered an entity separate from the acts of the hearing examiner. Minn.St. 363.071, subd. 2, makes this position untenable in that the statute defines the order of the hearing examiner as "a final decision of the department."
3. The third issue presented is whether the department has standing to appeal the district court's reversal of its hearing examiner's order.
The original decision by the hearing examiner was judicial and not administrative in nature. However, Minn.St. 363.10 provides for appeal to this court as follows:
"The commissioner, or the respondent, may appeal to the supreme court as provided by section 605.09, clauses (b) and (g) from an order of the district court issued pursuant to section 363.072, subdivision 1."
Minn.St.1971, § 605.09, repealed by L.1974, c. 394, § 11, had been superseded by *315 Rules of Civil Appellate Procedure, Rule 103.03, which provides in relevant part:
"An appeal may be taken to the Supreme Court:
* * * * * *
"(b) From an order which grants, refuses, dissolves, or refuses to dissolve, an injunction;
* * * * * *
"(h) Except as otherwise provided by statute, from the final order or judgment affecting a substantial right made in a special proceeding, provided that the appeal must be taken within the time limited for appeal from an order."
Normally, an agency which performs in a quasi-judicial capacity cannot claim that a trial court's reversal of the agency's decision affects a "substantial right." In this case, however, Minn.St. 363.10 specifically gives the commissioner of human rights the right to appeal a district court decision reviewing a "final decision of the department reached after a hearing" (Minn.St. 363.072, subd. 1), where a substantial right of the commissioner is involved. When a trial court reverses the decision of a hearing examiner which favored the Department of Human Rights as a party, we hold that a "substantial right" of the department is affected and the department may appeal to this court. Normally an agency has no right to appeal its own judicial decision to either lower or appellate courts. To so hold in this case, however, would make a nullity of Minn.St. 363.10,[1] which specifically gives the commissioner the right to appeal a district court judgment involving a decision made by the department in a hearing conducted under Minn.St. 363.071. Respondents' argument that the repeal of Minn.St. 605.09 in 1974 was intended to repeal Minn.St. 363.10 is not persuasive. The title of L.1974, c. 394, which repealed § 605.09, states in part that it is and act "eliminating certain statutory provisions which conflict with the rules of civil appellate procedure." There is no provision in c. 394 which repeals Minn.St. 363.10.
Affirmed.
MARSDEN, J., took no part in the consideration or decision of this case.
NOTES
[1] This statutory authority distinguishes this case from Minnesota Bd. of Health v. Governor's Certificate of Need App. Bd., Minn., 230 N.W.2d 176 (1975).